# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| Endang Sri Rejeki, individually, and as Personal Representative of the heirs of Abdul Efendi, Deceased; Ulfah Kusumaningsih, individually, and as Personal Representative of the heirs of Ariawan Komardy, Deceased; Vetri, individually, and as Personal Representative of the heirs of Berly Pranata Boen, Deceased; Endo Prabowo, individually, and as Personal Representative of the heirs of Christy Artyna Prabowo, Deceased; Septi Riyani, individually, and as Personal Representative of the heirs of Dicky Jatnika, Deceased; Edy Susanto, individually, and as Personal Representative of the heirs of Ervina Kusumawijayati, Deceased; Amri Syakban, individually, and as Personal Representative of the heirs of Fauzan Azima, Deceased; Mimin Suratmi, individually, and as Personal Representative of the heirs of H.K. Junaidi, Deceased; Winda Juwita, individually, and as Personal Representative of the heirs of Hedy, Deceased; Tayeb Tahir, individually, and as Personal Representative of the heirs of Idha Susanti, Deceased; Puspawijayanti, individually, and as Personal Representative of the heirs of Imam Riyanto, Deceased; James Sianturi, individually, and as Personal Representative of the heirs of Janry Efriyanto Sianturi, Deceased; Lie Miauw Sen, individually, and as Personal Representative of the heirs of Mack Stanley, Deceased; Meylanda Crisdiana, individually, and as Personal Representative of the heirs of Martono, Deceased; Nursia Manurung, individually, and as Personal Representative of the heirs of Martua | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **In re: Lion Air Flight JT 610 crash**<br><br><br>Case No. 20-cv-6380<br><br><br>Related to Lead Case: 18-cv-7686 (Before Hon. Thomas M. Durkin)<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

Sahata, Deceased; RR Ine Yunita SI, individually, and as Personal Representative of the heirs of Mohamad W. Noegrahantoro, Deceased; Ir Hasanuddin, individually, and as Personal Representative of the heirs of Nurul Rezkianti, Deceased; Toni Priyono Adhi, individually, and as Personal Representative of the heirs of Puspita Eka Putri, Deceased; Norman Purnama, individually, and as Personal Representative of the heirs of Raden Roro Savitri Wulurastuti, Deceased; Gusmardi, individually, and as Personal Representative of the heirs of Rivandi Pranata, Deceased; Iskandar, individually, and as Personal Representative of the heirs of Sui Khiun, Deceased; Sri Husman, individually, and as Personal Representative of the heirs of Sui Di, Deceased; Petty Novita, individually, and as Personal Representative of the heirs of Ubaidillah Salabi, Deceased; Isti Khasanah, individually, and as Personal Representative of the heirs of Wahyu Susilo, Deceased,

*Plaintiffs,*

v.

THE BOEING COMPANY, a corporation,

*Defendant.*

## COMPLAINT AT LAW

Plaintiffs, by their undersigned attorneys, Austin Bartlett of BartlettChen LLC and Manuel von Ribbeck and Monica Ribbeck Kelly of

Ribbeck Law Chartered, bring this Complaint at Law against the Defendant, THE BOEING COMPANY, and in support, allege the following:

### THE AMERICAN INTEREST IN THIS LITIGATION

1.      The 737 MAX 8 crashes in Indonesia and Ethiopia resulted in the deaths of 346 people and shook the U.S. aviation industry. The crashes have resulted in the sustained grounding of the 737 MAX fleet; the termination of Boeing's Chairman, President, and CEO; multiple Congressional hearings; investigations into the certification and delegation practices of the Federal Aviation Administration and Boeing's design of the MAX; multiple reports from the legislative and executive branch; a criminal investigation; and a two-minute address by the President of the United States.

2.      The crashes have also spawned proposed bipartisan legislation to reform the manner in which aircraft are certified in the United States and to strengthen oversight of Boeing.

3.      Given that Boeing and its component part manufacturers designed and manufactured the defective 737 MAX aircraft in the United States, the Federal Aviation Administration certified the MAX in the United States, and these crashes have had and will continue to have a profound effect on aviation safety practices in the United States, this litigation should be decided in the United States.

BACKGROUND

4.     On Monday, October 29, 2018, a newly-delivered Boeing 737 MAX 8 commercial aircraft crashed in the Java Sea off the coast of Indonesia killing everyone on board. The Boeing 737 MAX 8 was being operated by the Lion Air airline as Lion Air Flight JT 610.

5.     The newly-delivered Boeing 737 MAX 8 crashed as a result of, among other things, a new Boeing flight control system which automatically steered the aircraft toward the ground, and which caused an excessive nose-down attitude, significant altitude loss, and, ultimately, the crash into the Java Sea killing everyone on board.

6.     The new automated flight control system on the Boeing 737 MAX 8 is known as the Maneuvering Characteristics Augmentation System (MCAS). Boeing added MCAS because during its redesign of the Boeing 737, Boeing changed the type, size, and placement of the aircraft's engines, which made the aircraft susceptible to stalling and altered the aircraft's handling characteristics.

7.     Although the Boeing 737 MAX 8 has two angle of attack (AOA) sensors, Boeing knowingly designed the MCAS system to only rely on data from a single AOA sensor contrary to federal regulations, Boeing's own design practices, and hard-earned lessons from prior crashes.

8.     Due to this lack of redundancy, if a single AOA sensor is defective, the sensor will feed false information to the MCAS, which, in turn,

4

will cause the MCAS to repeatedly activate, override the pilots, and force the aircraft into an unwarranted nose-dive.

9.     On March 10, 2019, a second Boeing 737 Max 8 aircraft crashed in Ethiopia (Ethiopian Airlines Flight 302) under circumstances which are strikingly similar to the Lion Air JT 610 crash, namely Boeing's MCAS was erroneously activated and forced the aircraft into an unwarranted nose-dive.

10.     Following the Ethiopian Airlines crash, the Boeing 737 Max 8 aircraft was grounded around the world. Congress, the Department of Transportation, the Federal Aviation Administration (FAA), the Department of Justice, and the FBI have launched investigations into the certification and safety of the Boeing 737 MAX.

11.     On April 4, 2019, Boeing's then-Chairman, President, and CEO, Dennis A. Muilenburg, issued a statement wherein he admitted that Boeing's MCAS activated based on erroneous AOA information, and that this was a contributing cause of both the Lion Air JT 610 crash and the Ethiopian Airlines Flight 302 crash.

12.     Investigations into the tragic crashes of Lion Air JT 610 and Ethiopian Airlines Flight 302 suggest Boeing knew the following prior to these crashes:

(a) Boeing was aware that a highly trained Boeing test pilot needed in excess of 10 seconds to react to uncommanded MCAS activation which was deemed "catastrophic";

(b) Boeing concealed the fact that MCAS was a new system and failed to designate it as a safety-critical system in order to avoid

increased costs, greater scrutiny from the FAA, and increased training requirements for pilots and airline customers;

(c) Boeing had a financial incentive to minimize differences training between the 737NG and 737 MAX as Boeing was contractually obligated to pay a $1 million rebate for each 737 MAX aircraft sold to Southwest Airlines if simulator training was required for the MAX;

(d) Boeing was aware that MCAS was dependent on and vulnerable to a single AOA sensor failure;

(e) Boeing was aware that the AOA Disagree Alert, which was mandated as standard equipment on all 737 MAX aircraft, was not functional on 80% of the 737 MAX fleet because it was tied to an optional AOA Indicator display for which Boeing charged customers an increased price;

(f) Boeing persuaded the Federal Aviation Administration to omit any reference to MCAS from the Flight Crew Operations Manual (FCOM) and concealed the fact that the AOA Disagree alert was not functional in the FCOM though they knew such alerts were not working on 80% of the 737 MAX fleet, including the Lion Air accident aircraft;

(g) Boeing rejected various design proposals which would have made the 737 MAX safer, including AOA redundancy, a synthetic airspeed system, modern cockpit displays, an Engine Indicating and Crew Alerting System, and an MCAS warning light and aggressively pushed for minimal pilot training because it prioritized profit and market share over the safety of the flying public.

### SUBJECT MATTER JURISDICTION

13.     This Court has subject matter jurisdiction over this controversy under the Multiparty, Multiforum Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369 (MMTJA), because there is minimal diversity between the parties and the accident involves at least 75 deaths at a discrete location in a single accident. Boeing is a Delaware corporation with its principal place of

business in Illinois. Plaintiffs and Plaintiffs' Decedents are citizens of Indonesia. Jurisdiction under the MMTJA is thus satisfied. The crash of Lion Air Flight JT 610 into the Java Sea resulted in the deaths of all 189 people on board the aircraft.

14.     Plaintiffs elect to pursue all admiralty and maritime claims in this Court under the Savings-to-Suitors Clause. *See* 28 U.S.C. § 1333.

## PARTIES & VENUE

15.     Plaintiffs and Plaintiffs' Decedents are citizens of Indonesia.

16.     Defendant The Boeing Company ("Boeing") is a corporation organized under the laws of Delaware with its worldwide headquarters and principal place of business in Chicago, Illinois. Boeing designed, manufactured, tested, and sold the 737 MAX, including the defective MCAS.

17.     Venue is proper because Boeing's worldwide headquarters and principal place of business is located in Chicago, Illinois, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## GENERAL ALLEGATIONS

### I.  Boeing 737 MAX 8 Design & Manufacture

18.     Boeing's 737 series of aircraft is the highest selling commercial aircraft in history with over 10,000 aircraft delivered.

19.     Boeing's 737 MAX series is the fourth generation of the Boeing 737 series of aircraft and was first announced by Boeing on August 30, 2011; the first flight was several years later, on January 29, 2016.

20.     Prior to March 8, 2017, Boeing designed the 737 MAX 8 model aircraft in the United States.

21.     On March 8, 2017, the Federal Aviation Administration ("FAA") approved the design for the 737 MAX 8 model aircraft, also known as the 737-8.

22.     At all relevant times, Boeing manufactured the 737 MAX 8 model aircraft in the United States.

23.     The 737 MAX 8 is one of Boeing's several 737 MAX series of aircraft, the newest generation of Boeing's 737 series of aircraft, which Boeing initially designed, in the United States, in or around 1964—over 50 years ago.

24.     According to Boeing, as part of its generational redesigns of the 737 series of aircraft, it "has continuously improved the products, features, and services."

25.     At all relevant times, Boeing marketed the 737 MAX aircraft as a seamless continuation of its prior 737 series aircraft in terms of operation and maintenance.

26.     On its website, Boeing states:

Airlines ask for an airplane that fits smoothly in today's fleet

> Because of the 737's popularity with airlines everywhere around the world, integrating the new 737 MAX is an easy proposition. As you build your 737 MAX fleet, millions of dollars will be saved because of its commonality with the Next-Generation 737, ease of maintenance, wide availability of 737 pilots, and the global infrastructure that supports the aircraft in operation.[1]

On the same website, Boeing further states that "*737 Flight Crews Will Feel at Home in the MAX.*"[2] (emphasis added.)

27. The Boeing 737 MAX 8, however, had a significantly different design from previous 737-series aircrafts, which were not appropriately disclosed to airlines or pilots.

## II. Boeing 737 MAX 8 Defects

28. Unlike any prior 737, Boeing designed the 737 MAX 8 to automatically dive toward the ground in certain situations, namely, where the aircraft's AOA sensor provided information to the MCAS indicating such a dive was necessary to maintain lift.

29. A consequence of this unsafe design, however, was that any misinformation from the AOA sensor to the MCAS would cause the Boeing 737 MAX 8 to automatically and erroneously dive toward the ground. This condition can lead to an excessive nose-down attitude, significant altitude loss, and impact with terrain.

---

[1] https://www.boeing.com/commercial/737max/by-design/#/operational-commonality
[2] https://www.boeing.com/commercial/737max/by-design/#/advanced-flight-deck

### III. Lion Air Flight 610

30.     In or around August 2018, Boeing delivered a newly manufactured 737 MAX 8 aircraft with tail number PK-LQP (the "Subject Aircraft") to Lion Air airlines in Indonesia.

31.     Two months later, on the morning of October 29, 2018, Lion Air was operating the Subject Aircraft on a commercial flight from Jakarta, Indonesia to Pangkal Pinang, Indonesia ("Lion Air Flight JT 610").

32.     Around 6:22 a.m. on the morning of October 29, 2018, shortly after takeoff from Jakarta, the pilot for Lion Air Flight JT 610 asked air traffic control to return to Jakarta because of a problem controlling the subject aircraft.

33.     For nearly 10 minutes, the pilots fought for control of the aircraft but were repeatedly overridden by MCAS, which erroneously activated more than two dozen times and drove the nose of the airplane down to the sea. The passengers and crew were aware of the danger that they were in and their impending deaths and experienced pre-impact fear of impending and imminent death and conscious pain and suffering.

34.     Around 10 minutes later, around 6:32 a.m., the Subject Aircraft crashed into the Java Sea at a high speed and disintegrated.

35.     Plaintiffs' Decedents were onboard Flight JT 610 and died in the crash.

36.     At no relevant time prior to the crash of Lion Air Flight JT 610 into the Java Sea did Boeing adequately warn Lion Air or its pilots of the unsafe condition caused by the new "auto-diving" design of the 737 MAX 8 flight system.

37.     As a result of the crash of Lion Air Flight JT 610, on November 7, 2018, the FAA issued "Emergency Airworthiness Directive (AD) 2018-23-51 [to] owners and operators of The Boeing Company Model 737-8 and -9 airplanes," which contained mandatory warning and instructions as to the "unsafe condition . . . likely to exist or develop" in the 737 MAX 8 relating to its new auto-diving feature.

38.     According to reports, prior to the crash of Lion Air Flight JT 610, Boeing 737 pilots "were not privy in training or in any other manuals or materials" to information regarding "the new system Boeing had installed on 737 MAX jets that could command the plane's nose down in certain situations to prevent a stall." [3] Further reports indicate that Boeing "withheld information about potential hazards with the new flight-control feature." [4]

---

[3] https://www.malaymail.com/s/1692841/indonesia-says-situation-facing-lion-air-flight-jt610-crew-not-in-flight-ma

[4] https://www.wsj.com/articles/boeing-withheld-information-on-737-model-according-to-safety-experts-and-others-1542082575

CAUSES OF ACTION

## COUNT I – DEFENDANT BOEING
## STRICT PRODUCTS LIABILITY – WRONGFUL DEATH

1-38.    Plaintiffs re-adopt and re-allege general paragraphs 1 through 38 above.

39.    At the time the Subject Aircraft left the control of Boeing, the Subject Aircraft was defective, not fit for its intended purposes and unreasonably dangerous in one or more of the following particulars:

a)    the subject aircraft contained an auto-dive system—known as the MCAS—that was designed, manufactured, and configured to dive the aircraft toward the ground in certain conditions against the pilot's intentions and without adequate warning to the flight crew;

b)    the subject aircraft was designed, manufactured, and configured in a manner in which an auto-dive disengage during flight created an excessive and unrealistic work load on the flight crew;

c)    the subject aircraft lacked proper and adequate instructions and warnings regarding the design and functions of its auto-dive system;

d)    the subject aircraft lacked proper and adequate instructions and warnings and/or limitations regarding flight procedures for a malfunctioning auto-dive system;

e)    the subject aircraft was designed without an electronic alert system to timely inform pilots what was malfunctioning and how to resolve it;

f)    the subject aircraft's auto-dive system was designed based on data fed to it from a single AOA sensor, though the aircraft was equipped with two AOA sensors, which created a single point of failure;

g)    the subject aircraft contained defective AOA sensors;

    h)    despite the lack of redundancy in the design of the MCAS, the subject aircraft did not come with safety critical equipment including an AOA indicator or AOA disagree light; Boeing's customers, including Lion Air, had to pay extra for this critical safety equipment;

    i)    Designed the aircraft without AOA redundancy or a synthetic airspeed system, modern cockpit displays, an Engine Indicating and Crew Alerting System, and an MCAS warning light.

    j)    the subject aircraft was otherwise defective by nature of its design, manufacture, configuration, and/or assembly in particulars to be determined by discovery herein.

40.    As a direct and proximate result of one or more of the foregoing conditions, the Subject Aircraft operating as Lion Air Flight JT 610 crashed after takeoff in the Java Sea, and Plaintiffs' Decedents suffered personal injury and death.

41.    Due to the tragic death of the Decedents, Plaintiffs have been injured and claim all damages available to them, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including substantial pecuniary losses, and grief, sorrow, mental suffering, loss of society, loss of companionship, love, and affection, and loss of advice.

42.    Plaintiffs bring this action pursuant to the Death on the High Seas Act, 46 U.S.C. §§ 30302, 30307, the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq*., or such other law as the Court determines to be applicable under the circumstances of this case.

WHEREFORE, the Plaintiffs, as the Personal Representatives of the heirs of the Decedents, on behalf of all survivors, beneficiaries, and heirs,

pray that the Court enter judgment in their favor and against the Defendants, and award them all damages available under the law, their court costs in this matter, and such other relief as the Court deems just and proper.

## COUNT II – DEFENDANT BOEING
## STRICT LIABILITY – PRODUCTS LIABILITY – SURVIVAL ACT

1-39. Plaintiffs re-adopt and reallege paragraphs 1-39 of Count I above.

40. As a direct and proximate result of one or more of the foregoing conditions, the Subject Aircraft operating as Lion Air Flight JT 610 crashed after takeoff in the Java Sea, and Plaintiffs' Decedents suffered multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and sever terror prior to impact and prior to their deaths, and property damage.

41. Had Plaintiffs' Decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

## COUNT III – DEFENDANT BOEING
## NEGLIGENCE – PRODUCTS LIABILITY – WRONGFUL DEATH

1-38. Plaintiffs re-adopt and re-allege general paragraphs 1 through 38 above.

39. At all relevant times, Boeing owed a legal duty to assure that the Subject Aircraft was properly designed, manufactured, and assembled and free from defects so as not to cause personal injury or death.

40.   Boeing breached its duties under the law and was negligent in one or more of the following ways:

a)   the subject aircraft contained an auto-dive system—known as MCAS—that was designed, manufactured, and configured to dive the aircraft toward the ground in certain conditions against the pilot's intentions and without adequate warning to the flight crew;

b)   the subject aircraft was designed, manufactured, and configured in a manner in which an auto-dive disengage during flight created an excessive and unrealistic workload on the flight crew;

c)   the subject aircraft lacked proper and adequate instructions and warnings regarding the design and functions of its auto-dive system;

d)   the subject aircraft lacked proper and adequate instructions and warnings and/or limitations regarding flight procedures for a malfunctioning auto-dive system;

e)   the subject aircraft was designed without an electronic alert system to timely inform pilots what was malfunctioning and how to resolve it;

f)   the subject aircraft's auto-dive system was designed based on data fed to it from a single AOA sensor, though the aircraft was equipped with two AOA sensors, which created a single point of failure;

g)   the subject aircraft contained defective AOA sensors;

h)   despite the lack of redundancy in the design of the MCAS, the subject aircraft did not come with safety critical equipment including an AOA indicator or AOA disagree light; Boeing's customers, including Lion Air, had to pay extra for this critical safety equipment;

i)   the subject aircraft was otherwise defective by nature of its design, manufacture, configuration, and/or assembly in particulars to be determined by discovery herein;

j) Boeing failed to conduct appropriate testing of the subject aircraft's components and systems prior to delivery to Lion Air;

k) Boeing failed to conduct a thorough failure modes and effects analysis of the subject aircraft's components and systems, including of the MCAS;

l) MCAS commanded more stabilizer input than could be counteracted by the flight crew pulling back on the column; and,

m) Was otherwise negligent.

41. As a direct and proximate result of one or more of the aforementioned acts of negligence by Boeing, the Subject Aircraft operating as Lion Air Flight JT 610 crashed after takeoff in the Java Sea and Plaintiffs' Decedents sustained fatal injuries.

42. Due to the tragic death of the Decedents, Plaintiffs have been injured and claim all damages available to them, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including substantial pecuniary losses, and grief, sorrow, mental suffering, loss of society, loss of companionship, love, and affection, and loss of advice.

43. Plaintiffs bring this action pursuant to the Death on the High Seas Act, 46 U.S.C. §§ 30302, 30307, the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq*., or such other law as the Court determines to be applicable under the circumstances of this case.

WHEREFORE, the Plaintiffs, as the Personal Representatives of the heirs of the Decedents, on behalf of all survivors, beneficiaries, and heirs,

pray that the Court enter judgment in their favor and against the Defendants, and award them all damages available under the law, their court costs in this matter, and such other relief as the Court deems just and proper.

## COUNT IV – DEFENDANT BOEING
## NEGLIGENCE – PRODUCTS LIABILITY – SURVIVAL ACT

1-40.   Plaintiffs re-adopt and reallege paragraphs 1-40 of Count III above.

41.     As a direct and proximate result of one or more of the foregoing conditions, the Subject Aircraft operating as Lion Air Flight JT 610 crashed after takeoff in the Java Sea, and Plaintiffs' Decedents suffered multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and sever terror prior to impact and prior to their deaths, and property damage.

42.     Had Plaintiffs' Decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

## COUNT V – DEFENDANT BOEING
## NEGLIGENCE -- FAILURE TO WARN – WRONGFUL DEATH

1-38.   Plaintiffs re-adopt and re-allege general paragraphs 1 through 38 above.

39.     At all relevant times, Boeing had a duty to inform and warn the owners, operators, and pilots of the 737 MAX 8 series of aircraft, including the Subject Aircraft, of the unsafe condition likely to exist or develop by virtue of MCAS and the auto-dive feature.

40.     Boeing breached its duties under the law and was negligent in

one or more of the following ways:

a)      the subject aircraft lacked proper and adequate instructions and warnings regarding the design and functions of its auto-dive system known as MCAS;

b)      the subject aircraft lacked proper and adequate instructions and warnings and/or limitations regarding flight procedures for a malfunctioning MCAS;

c)      the subject aircraft lacked an electronic alert system to timely inform pilots what was malfunctioning and how to resolve it;

d)      Boeing failed to inform airlines and pilots, including the Lion Air and its pilots, that unlike prior 737 Models, pulling back on the yoke and raising the nose would NOT activate breakout switches to stop automated tail movement; and,

e)      the 737 MAX 8 Flight Crew Operations Manual failed to appropriately alert pilots, including the pilots of the subject aircraft, to the design, functions, and hazards of Boeing's MCAS and procedures for addressing a malfunctioning MCAS.

f)      Failing to properly train pilots to identify an AOA sensor failure and MCAS input.

g)      Concealed that a malfunction of MCAS would result in a "catastrophic failure" despite the experience of Boeing test pilots;

h)      Deliberately understated the need for simulator training when transitioning from the 737 NG to the 737 MAX because it was in Boeing's financial interest under contracts with airlines, including Southwest Airlines, to minimize differences training;

i)      Concealed that the AOA disagree alert was not functional though Boeing knew this fact well in advance of the fatal crash;

j)      failed to warn that the flight control system and MCAS commanded more stabilizer input than could be counteracted by the flight crew pulling back on the column; and,

k)      failed to warn that the flight control system interfered with the pilots' ability to manually control the airplane; and,

l)      was otherwise negligent.

41.     As a direct and proximate result of that breach, the Subject Aircraft operating as Lion Air Flight JT 610 crashed after takeoff in the Java Sea, and Plaintiffs' Decedents sustained fatal injuries.

42.     Due to the tragic death of the Decedents, Plaintiffs have been injured and claim all damages available to them, the estate, the survivors, the beneficiaries, and the heirs under applicable law, including substantial pecuniary losses, and grief, sorrow, mental suffering, loss of society, loss of companionship, love, and affection, and loss of advice.

43.     Plaintiffs bring this action pursuant to the Death on the High Seas Act, 46 U.S.C. §§ 30302, 30307, the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq.*, or such other law as the Court determines to be applicable under the circumstances of this case.

WHEREFORE, the Plaintiffs, as the Personal Representatives of the heirs of the Decedents, on behalf of all survivors, beneficiaries, and heirs, pray that the Court enter judgment in their favor and against the Defendants, and award them all damages available under the law, their court costs in this matter, and such other relief as the Court deems just and proper.

## COUNT VI – DEFENDANT BOEING
## NEGLIGENCE – FAILURE TO WARN – SURVIVAL ACT

1-40.  Plaintiffs re-adopt and reallege paragraphs 1-40 of Count V above.

41.    As a direct and proximate result of one or more of the foregoing conditions, the Subject Aircraft operating as Lion Air Flight JT 610 crashed after takeoff in the Java Sea, and Plaintiffs' Decedents suffered multiple and diverse injuries of both a personal and pecuniary nature, inclusive of conscious pain and suffering and sever terror prior to impact and prior to their deaths, and property damage.

42.    Had Plaintiffs' Decedents survived, they would have been entitled to bring an action for damages, and such action has survived them.

WHEREFORE, the Plaintiffs, as the Personal Representatives of the heirs of the Decedents, on behalf of all survivors, beneficiaries, and heirs, pray that the Court enter judgment in their favor and against the Defendants, and award them all damages available under the law, their court costs in this matter, and such other relief as the Court deems just and proper.

### JURY TRIAL

Plaintiff demands a jury trial on all claims and issues so triable.

Dated: October 27, 2020          Respectfully submitted,

By: /s/ *Austin Bartlett*
Austin Bartlett (ARDC No. 6273427)
**BartlettChen LLC**
150 North Michigan Avenue, Suite 2800
Chicago, Illinois 60601

(312) 624-7711
www.bartlettchenlaw.com
austin@bartlettchenlaw.com

--And--

By: /s/ *Manuel von Ribbeck*

Manuel von Ribbeck (ARDC No. 6230117)
Monica Ribbeck Kelly (ARDC No. 6225920)
**Ribbeck Law Chartered**
505 N. Lake Shore Drive, Suite 102
Chicago, Illinois 60611
(833) 883-4373
(312) 973-0146
www.ribbecklaw.com
mail@ribbecklaw.com
monicakelly@ribbecklaw.com

*Counsel for Plaintiffs*